BOYD, Justice.
These proceedings are before the Court on appeal from a circuit court order denying Kenneth Griffin’s motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and upon Griffin’s petition for a writ of habeas corpus. Griffin is a state prisoner held under two sentences of death. We have jurisdiction of his appeal and petition. Art. V, § 3(b)(1) & (9), Fla. Const. We affirm the order denying post-conviction relief and we deny the petition for writ of habeas corpus.
*876 Appellant’s convictions on two counts of first-degree murder and his two sentences of death imposed therefor were affirmed on appeal by this Court. Griffin v. State, 414 So.2d 1025 (Fla.1982). He moved for post-conviction relief in the trial court on numerous grounds based on the following asserted infirmities or defects: (1) lack of effective assistance of counsel at trial; (2) improper dismissal of a prospective juror at trial; (3) error in the instructions given to the jury at the trial; (4) prosecutorial misconduct in inflaming and misleading the jury; (5) systematic exclusion of black citizens from the venire from which the jurors were chosen; (6) erroneous instruction to the jury that it could consider both premeditation and felony-murder theories on both counts when there was no evidence of premeditation on one of the murders; (7) arbitrariness in sentencing appellant to death; and (8) a pattern of racial disparity in the prosecution, trial, and sentencing of capital offenders in Florida.
The trial judge found appellant’s motion to vacate, set aside, or correct the conviction and sentence to be insufficient on its face to state a claim for relief. However, the judge announced his intention to hold a hearing and allow the presentation of evidence as to the claim of ineffective assistance of counsel only. The claim of ineffective assistance of counsel set forth in the motion consisted of forty-eight asserted “failures and inadequacies.” After the evi-dentiary hearing, the trial judge made findings of fact on each of the allegations of ineffective assistance. The trial judge found all the alleged deficiencies to be either factually unsupported or legally inconsequential.
We find that the trial court’s denial of relief, without evidentiary hearing, on all grounds other than ineffective assistance of counsel, was correct. We also find the trial court’s findings regarding ineffective assistance of counsel were supported by the evidence adduced at the hearing. The trial court’s order, which we affirm, is appended to this opinion.
In his petition for writ of habeas corpus, Griffin argues that he was not afforded effective assistance of counsel in pursuing his appeal previously decided by this Court. The petition identifies four issues which appellate counsel did not argue to this Court and which petitioner maintains should have been argued.
Petitioner argues that a prospective juror was excused for expressing mere scruples about capital punishment, which would not have prevented him from serving as an impartial juror, and that the juror’s dismissal was therefore improper under the rule of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The following is a direct quote from the trial court record:
MR. HERBERT: Okay. You could vote guilty but you don’t think you could ever recommend the death penalty to the Court no matter what the circumstances?
PROSPECTIVE JUROR FAYSON: I don’t think I could.
MR. HERBERT: Okay. Could you vote guilty if you felt the rest of the jury was going to recommend the death sentence? By that I mean, could you still vote guilty even though the rest of the jury was going to recommend the death penalty in your mind?
PROSPECTIVE JUROR FAYSON: And could I vote guilty? I doubt it. I doubt it very much.

THE COURT: I believe I heard him say in response to the question just before the challenge was made, that if he found himself in the position where if voting guilty he knew that the others would then vote to recommend the death penalty, that he would not vote to convict.
I believe that is what you said, isn’t it, Mr. Fayson?
PROSPECTIVE JUROR FAYSON: Yes, sir.
Considering the totality of the questions and answers put to this juror, appellate *877 counsel could have reasonably concluded that Witherspoon offered no relief.
Petitioner contends that appellate counsel should have argued that the trial court had erred in instructing the jury on felony murder because a first-degree felony murder conviction was improper under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Petitioner’s argument misapprehends the holding of the United States Supreme Court in En-mund. There was no error in instructing the jury on first-degree felony murder.
Petitioner contends that his appellate counsel was defective in failing to argue that the trial court had erred in not instructing the jury on second-degree felony murder, which petitioner characterizes as a lesser included offense upon which there was some evidence. The record shows that appeal counsel in fact did present arguments to this Court on the lack of instructions on all degrees of homicide. Petitioner’s argument is without merit because, in light of the statutory definition of second-degree felony murder applicable at the time of the crime, there was no evidence to support the instruction petitioner now says should have been given. See Adams v. State, 341 So.2d 765 (Fla.1976), cert. denied, 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 158 (1977).
Petitioner contends that appellate counsel was defective in not raising the issue of inflammatory and misleading statements by the prosecutor. We do not find the cited utterances of the prosecutor to have been of such magnitude as to require that appellate counsel either raise them or be labelled ineffective.
For the foregoing reasons, and for the reasons stated in the attached order of the trial court, we affirm the trial court’s order and deny the petition for habeas corpus.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OV-ERTON, McDonald, EHRLICH and SHAW, JJ., concur.
IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT IN AND FOR BRADFORD COUNTY, FLORIDA
STATE OF FLORIDA, Plaintiff, v. KENNETH GRIFFIN, Defendant.
CRIMINAL ACTION NO. 78-178-CF
ORDER DENYING AMENDED MOTION TO VACATE, SET ASIDE OR CORRECT CONVICTION AND SENTENCE AND ORDER A NEW TRIAL
Defendant, Kenneth Griffin, based on a jury recommendation to impose death in each of two counts of murder, was sentenced to death by the undersigned trial judge on April 19, 1979. A unanimous decision affirmed the judgments and sentences, Griffin v. State, 414 So.2d 1025 (Fla.1982).
The Honorable Bob Graham, Governor of the State of Florida, on February 21, 1984 issued a Death Warrant effective for the week beginning March 16, 1984. The date of execution of the death sentences is now set for March 20, 1984.
This cause is before the Court on an Amended Motion to Vacate, Set Aside or Correct Conviction and Sentence and Order a New Trial. At the request of defendant, an evidentiary hearing was held on March 13, 1984 on the claim of ineffective assistance of trial counsel, Mr. Leonard E. Ireland, Jr., of Gainesville, Florida.
Mr. Ireland, an outstanding member of the local Bar, and a private practitioner with one of the oldest and best law firms in this area, was appointed by another Circuit Judge previously assigned to this case to represent defendant Griffin upon a certification of conflict by the public defender who had previously represented Willie James Bryant, one of three participants in these murders. Bryant had been granted immunity by the State and testified at the trial. Another outstanding private attorney, Mr. Michael L. Bryant, was appointed *878 to represent the co-defendant, Robert John Hinson, who was severed from this trial March 8, 1979. A nolle prosequi of the charges against Hinson was entered by the State on April 9, 1979.
The undersigned, as trial judge, entered judgment and sentences of death for defendant, Griffin, on April 19, 1979. His trial counsel, Mr. Ireland, also handled the appeal resulting in affirmance by the Supreme Court of Florida. Mr. Ireland asked to be relieved as counsel following the Supreme Court decision, and the undersigned sought and secured another capable and experienced attorney, a former public defender, Mr. Thomas J. Farkash, to represent defendant Griffin to pursue his ease through clemency proceedings by Order entered November 2, 1982. Defendant, Griffin, asked the Court to reconsider such appointment of Mr. Farkash, advising that he had secured “volunteer counsel”, Mr. Mel Lamelas of Miami, and an Order so relieving Mr. Farkash was entered November 24, 1982. The undersigned declined the request of Mr. Lamelas to be appointed as special public defender for defendant Griffin because of unfamiliarity with Mr. Lamelas. (Letter dated 12/14/82 from Court to Mr. Lamelas.)
Mr. Lamelas proceeded as volunteer counsel to represent defendant, Griffin, and he filed a Motion to Vacate, Set Aside or Correct Conviction and Sentence on April 20, 1983, but he never asked that such Motion be heard, he did not send the undersigned a copy of such Motion or advise that such Motion had been filed, and the undersigned was completely unaware that such Motion existed until just prior to the issuance of the Governor’s Death Warrant on February 21, 1984.
Upon issuance of the Death Warrant, said Motion was set for hearing March 6, 1984. At the. March 6, 1984 hearing, Mr. John D. Middleton of the local Bar, filed an Amended Motion to Vacate, Set Aside or Correct Conviction and Sentence and Order a New Trial, a Motion for an Evidentiary Hearing and Production of Defendant at the Hearing, an Application for Stay of Execution, a Motion for Continuance, and Motions to admit Messrs. Donald Baer and Frederick T. Davis of the New York Bar as counsel pro hac vice to represent the defendant. After some preliminary discussion the hearing at the Bradford County Courthouse was recessed by the Court to reconvene at Florida State Prison in order that the defendant could assure the Court of his wishes regarding his counsel. The hearing reconvened at 11:00 a.m., at Florida State Prison March 6, 1984. Mr. Lame-las appeared and sought permission to withdraw as counsel with defendant’s consent, which the Court refused, but the Court authorized with defendant’s consent the appearance pro hac vice of Messrs. Baer and Davis to also represent defendant, together with Mr. Middleton and Mr. Lamelas.
Although the Court made no rulings on the merits of the Motion or Amended Motion to Vacate, etc., against the urging of the State, the Court announced that it would grant an evidentiary hearing on the matters raised in said Motion pertaining to the allegations of ineffective counsel. Defendant’s counsel and the State sought a continuance of such evidentiary hearing, and such evidentiary hearing was then set for 9:00 a.m., March 13, 1984.
Because the Amended Motion to Vacate, etc. filed March 6, 1984, was couched only in general and vague language in its allegations of ineffective trial counsel, and in argument presented it appeared that the specific matters claimed to support such allegations were those recited in the previous Motion of similar import filed April 20, 1983, the Court directed counsel to file a bill of particulars to specifically set out those matters complained of as required by Knight v. State, 394 So.2d 997 (Fla.1981). The Court directed such filing to be accomplished by not later than March 9, 1984 at 9:00 a.m., and also set a hearing at that time to argue legal questions relating to such Motion and to determine the specific matters on which evidence would be permitted at the hearing on March 13, 1984.
*879 The Application for Stay of Execution was denied March 6, 1984, on March 9, 1984 another Application for Stay of Execution was orally made and denied, and such Motion was renewed and denied during the hearing March 13, 1984.
At the March 9, 1984 hearing defense counsel filed a Supplement to Amended Motion Pursuant to Florida Rules of Criminal Procedure 3.850, a Memorandum of Law in Support of Amended Motion to Vacate, Set Aside and Correct Conviction and Sentence and Order a New Trial, and an Appendix to said Motion. Following argument of counsel and consideration by the Court the Court announced its ruling on the record at such hearing to permit presentation of evidence on the claims of ineffective trial counsel as claimed on pages 8 through 19 of the above referred to Memorandum. The Court heard argument presented on the other points raised, but denied relief on all other grounds stated.
The Court is keenly aware of the time constraints imposed in this case and the ultimate penalty to be paid if relief is not granted. No satisfactory explanation has been presented as to why the April 29,1983 Motion to Vacate, etc. was not brought to the Court for consideration, but adequate and ample opportunity to be fully heard has now been afforded, even though both the original and amended Motions to Vacate are facially deficient under the requirements of Knight v. State, 394 So.2d 97 (Fla.1981) and Washington v. Strickland, 693 F.2d 1243 (5th Cir. en banc 1982). This Court has attempted to heed the admonition of the Florida Supreme Court in Jones v. State, 446 So.2d 1059 (Fla.1984) and afford defendant an opportunity to be heard.
Before addressing the specific matters raised at the March 13, 1984 hearing, and although my concerns may have little effect in this or other similar cases, I wish to express a sincere and grave concern that I face as a trial judge. I have dedicated a career to the law extending over 36 years, first as a trial lawyer and more recently as a trial judge. I have previously defended indigent clients under appointment as private counsel by the Court, including those charged with First Degree Murder, and as a trial judge feel a keen responsibility to see that competent counsel is afforded every person charged with crime. Although the constitutional guarantees of competent and effective assistance of counsel should be always subject to appropriate review when there is a substantial reason for such review, the practice during recent years has been permitted to develop to the extent that a charge of ineffective assistance of counsel is brought as a matter of course and routine in almost every case where a result is encountered unfavorable to an accused. Notwithstanding numerous pronouncements by appellate courts that the review of counsel’s performance is not to be viewed with “20-20 hindsight,” the initial charges made by those asserting such claims of ineffectiveness is always made with “20-20 hindsight” and in possession of a complete record for review to form the basis for study and deliberate dissection and “second-guessing”. Of course, where a life is at stake, more concern must be given when charges of ineffective counsel are made, but in such cases, a trial judge has the initial responsibility of securing competent counsel in the first place, and often outside the office of the public defender. I am perplexed by the fact, that a chilling effect is had on very able private practitioners who will not allow themselves to be so publicly attacked and ridiculed and their reputations tarnished by such after the fact allegations of incompetence that understandably receive great notoriety. Somehow we must always assure that competent and effective assistance of counsel is afforded every person accused of crime, but dissatisfaction following the rendering of such effective assistance should not be permitted to allow procedures that result in a refusal by competent counsel to undertake such service in the first place. It is therefore incumbent on the judiciary, this trial judge included, to consider these matters in the proper perspective in order that we can continue to assure the availability of competent and willing attorneys to re *880 present those charged with violations of our laws. I interpret Knight v. State, 394 So.2d 997 (Fla.1981) as the proper guide to achieve this necessary review, and although stated in different words, the same is sought to be accomplished by Washington v. Strickland, 693 F.2d 1243 (5th Cir. en banc 1982).
For reasons previously stated private counsel had to be appointed for the defendant. Another Circuit Judge then assigned to this case chose to go outside Bradford County, with a relatively small Bar, and secured the consent of Mr. Ireland to represent the defendant. Mr. Ireland is an active and well respected practitioner in Gainesville with a relatively larger Bar. He was admitted to The Florida Bar in 1967 and was in 1979 and is now a partner in the law firm of Clayton, Johnston, Quin-cey, Ireland, Felder and Gadd, one of the oldest and most successful law firms in this area of our state. He is certified as a civil trial attorney by The Florida Bar (there is no similar certification procedure for criminal trial lawyers). Because, as the trial judge in this case, it was my responsibility to make a subjective determination of Mr. Ireland’s ability and competence, I can and do observe that he came to this trial as an experienced and capable advocate, which observations were and are made and expressed now based on many years of acquaintance and observation as a colleague at the Bar and a worthy adversary during my years of practice. I expressed on the record my own observations as to his competence and the handling of this case at the conclusion of the penalty phase of the case and after the jury had been finally discharged when I stated:
I would also at this time like to state publicly and for the record that the Court wishes to commend Counsel for the State and the Defendant for the high degree of professional conduct exemplified by them and each of them throughout these entire proceedings. Though it may have appeared and at times was necessary that the Court intervene to make sure that matters are handled appropriately, as is the Court’s duty, it is the Court’s firm conviction that counsel for each, the State and the Defendant, in representing the cause that is their responsibility to represent, that they discharged their duty in the very highest professional tradition and they are to be commended for it. p. 842, TR.
I have not changed my opinion and nothing has been presented to me to justify any change, although given the advantage of deliberate review of a complete record, and with suggestions and ideas now made by others who also have such record to review, there may be other or different matters done or tactics pursued than those actually undertaken. In no instance yet presented to the Court do I find that there was a “substantial and serious deficiency measurably below that of competent counsel” to “demonstrate prejudice to the defendant to the extent that there is a likelihood” that any such conduct affected the outcome of the court proceedings as is required. Knight, supra. Nor can I find, as enunciated by Washington, supra, that the overall conduct of Mr. Ireland “rose to the level of ineffective assistance of counsel” and that any of the suggested conduct of ineffective counsel caused the defendant “actual and substantial detriment.”
These conclusions are reached following a thorough review by me of the record and full consideration of the matters presented at the evidentiary hearing.
The matters specified by defendant’s Memorandum of Law, etc., filed March 9, 1984 on pages 8 through 19 are those that were presented to and considered by the Court as the basis for the claim of ineffective assistance of counsel. They are discussed here in the Order recited in the Memorandum.
I Pretrial Investigation:
1-3. These paragraphs attack the professional credibility of Mr. Ireland and an assistant attorney in his law firm who assisted Ireland in the preparation of the case. This general and broadside attack on Mr. Ireland is not well founded and the *881 allegation that Ireland turned this ease over to his associate, Mr. Forbes, “with little or no supervision” is not true and constitutes an unwarranted and callous reproach on the professional integrity of both Mr. Ireland and Mr. Forbes. Mr. Ireland had, previous to this trial, successfully defended one capital case, his client received a life sentence, he had other previous capital and other criminal defense cases and was an experienced trial lawyer in both civil and criminal cases.
4-5. Mr. Ireland was not noticed of the taking of depositions on 12/27/78, but he secured and used copies of such depositions in preparation for and at the trial. His testimony and that of his associate, Mr. Forbes, constitute plausible and reasonable grounds for his conscious determination not to take further depositions of these same witnesses.
6. In addition to the deposition of the witness Bryant, Mr. Ireland had a lengthy written statement from Mr. Bryant, and Ireland’s testimony presented at this hearing, although capable of now being “second-guessed,” for the reasons stated by him he elected not to further depose the witness.
7. Mr. Ireland conferred with Bryant’s wife prior to the trial and gave a plausible and justifiable reason not to take her further deposition.
8. Mr. Ireland was never made aware of any evidence to be offered by defendant’s father, the defendant never informed him and any value that such a deposition may have rendered has not yet been made known.
9. Mr. Ireland explained that he knew Mr. Carter previously, that he talked to him on several occasions that he had the actual benefit of the information Carter had, and chose not to depose him. What more could have been obtained or its use is purely speculation.
10. The investigative files of the Police are not subject to discovery and defense has not yet demonstrated that such matter, if available, would be of any use. Ireland’s investigator was instructed to obtain such of this type information as he could.
11. Ireland had talked with Cooter, he had learned already that Cooter had used Bryant as an informer, and Ireland testified that a deposition was unnecessary.
12. Ireland made a judgment to attack the credibility of Bryant by using his wife or his former wife. He had his investigator make the exploration complained of and no better impeachment evidence was available.
13. Ireland had the benefit of a deposition already taken of Henry. Ireland, for reasons, and understandable reasons, testified that he chose not to further depose him and afford Henry a chance to rehabilitate statements already in his prior deposition that he felt were impeachment, and Ireland actually developed these matters at the trial.
14. No evidence or argument was presented on this point, and the suggestion made now is pure speculation that something may have developed.
15. As stated previously, the investigative files of the Police Department are not subject to discovery. What they may have shown, if anything, is not yet known, and Ireland instructed his investigator to make this type inquiry.
16. Ireland testified that he and his investigator attempted to find out matters in the community about Mr. Henry and nothing more damaging than his own deposition was found.
17. The deposition of Henry Hamm already taken clearly shows his inability to afford the desired alibi. No good purpose would have been served by another deposition.
18-22. Ireland was never told by Griffin about his brother or that he had any information available to assist him. Neither was Ireland ever told by Griffin about Pool, Crosby, Simmons, or Griffin’s aunt, Mrs. Martin. Even if we accept Griffin’s present testimony (which the Court rejects as untruthful) that Ireland and Forbes never saw him until two weeks prior to the *882 trial, Griffin and Ireland were together in the presence of the Court for four days during the guilt phase of the trial. It is now suggested that information from these persons may have been of benefit at the penalty phase. Griffin apparently chose not to share such information with his attorney.
II VOIR DIRE
The points raised here are not considered by this Court as properly included for purposes of collateral attack on the Judgment and Sentence, but are considered only in support of the claim of ineffective assistance of counsel.
1. This allegation constitutes an incorrect statement and conclusion based on the record itself. It is'now for the first time claimed that Ireland should have objected to the Court excusing prospective juror Fayson for cause. Indeed, Mr. Ireland did argue appropriately with the Court when the challenge for cause was presented by the State. Having reviewed the record pertaining to this matter the Court finds no reason to now suggest that Ireland should have pursued the matter further. Who can now say that a conscious decision made not to alienate members of the jury by pursuing such objection was an improper tactic?
2. It is claimed that Ireland should have challenged for cause 8 of the jurors who sat in the case and not a single recitation in the Amended Motion or Memorandum nor in the record itself would serve as a proper basis for challenge for cause. Had such a challenge been made on the record it would have been denied. Who can now state that the failure to make such challenges and not only alienate such prospective jurors, but others as well, for such flimsy and baseless reasons constitutes an improper trial tactic?
3. This point charges Mr. Ireland with not objecting to the prosecutor’s reference to race. Of all the points raised, this is perhaps the most absurd, and is indicative of the extent present counsel will go to inject matters into this case that were never there. First, defense counsel misrepresents the facts and second the conclusions sought to be drawn are absolutely ridiculous. There were only two references made during voir dire to the color of the victims and these were made entirely in the context of identification of the victim. (TR p. 26, 135) Two other references for the exact same purpose were made during the prosecution’s opening statement (TR p. 226, 230) and once during questioning of the witness Bryant (TR p. 458). A careful review of the entire record clearly reveals that this trial was conducted unblemished by any racial slurs or inferences. To suggest otherwise is not only an unwarranted attack on Mr. Ireland, the Assistant State Attorney, Mr. Hebert, but this Court as well. Neither attack has any basis whatsoever. Who is now to say that Mr. Ireland should be faulted for not injecting the subject of racial bias, either intended or unintended, into this trial conducted entirely without any such insinuation?
Ill TRIAL
1. Defense claims that Mr. Ireland failed to effectively cross-examine the witness Bryant and failed to impeach his testimony by use of Bryant’s deposition. A careful reading of Bryant’s trial testimony, both on direct and cross-examination, together with Bryant’s deposition fails to disclose the inconsistency of Bryant claimed by the defendant. Inferences may be drawn from the lack of precision in reciting the exact order in which Bryant told his minister, his wife, his father, his attorney and deputy Carter, but the deposition itself shows that Bryant refused to answer such questions. The trial record demonstrates that Ireland did make appropriate use of the deposition, he did attempt to impeach Bryant in the ways that Ireland thought were best and I cannot now question such tactic.
2. Ireland gave a sound and logical reason for his decision not to call Cooter because he had on several occasions vouched for Bryant’s veracity as an informer in securing such warrants.
*883 3. Ireland examined Bryant’s wife in the fashion and to the extent that he felt proper. His was an approach taken as a result of his own strategy developed for this trial.
4. Ireland has fully explained that he determined not to require production of the mentioned diary and he stated that he indeed made this decision after talking with Ms. Bryant.
5. Matters pertaining to the failure to again take the deposition of Henry have already been discussed here and were explained fully by Mr. Ireland. At the trial Ireland used the deposition already taken to attempt to impeach his testimony.
6. Whether Griffin owed Henry money is not yet known to the Court. No testimony was presented to that effect then or now. Griffin testified at the hearing that he never shared any such information with Ireland.
7. It has already been established that Hamm would have been absolutely no use as an alibi witness. To put him on the stand would have been a gross mistake in judgment.
8. Counsel failed to argue or present any evidence on the charge of “shocking ineffective assistance of counsel when he put his client on the stand.” I assume only that defense counsel discovered that Griffin insisted on taking the stand.
9. That Griffin’s brother could have “undercut” the evidence relating to the pri- or conviction of Griffin is unsupported by any fact or suggestion. While it was never made known to the Court what such evidence may have been, the fact of such conviction itself constitutes evidence in support of the relevant aggravating circumstance. No explanation could alter that fact.
10. No proof nor any evidence was offered in support of this point made. I must assume that such proof does not exist.
11. The evidence disclosed that Mr. Glover died in 1977. He could not have been deposed or used as a witness.
12.The failure to request an instruction on felony second degree murder I must assume was also a tactical decision made. Ireland was not questioned about this at the hearing and I shall not speculate.
Note there is no paragraph 13.
14. The complaint now made about Ireland’s failure to object to 2 statements made by the prosecutor in closing argument was not argued by defense at the hearing. I treat it as abandoned or admittedly unimportant.
CHARGE TO THE JURY
1-6 These points now sought to be made are excellent after the fact arguments. While they are not permitted by me now as a collateral attack on the Judgment and Sentence, I announced that I would permit the defense to argue these matters only in their support of ineffective counsel. The failure by the Court to charge the jury on the underlying felony of robbery was an oversight, but the oversight was corrected in the manner authorized by the rules and such procedure was approved by the Supreme Court on appeal. This, like the other matters complained of in points 1-6, has been addressed by the Supreme Court, and my review of these entire proceedings and these points in particular do not cause me to conclude that such procedure demonstrates ineffective assistance of counsel as pronounced by Knight, supra or Washington, supra. Certainly we can’t now fault Ireland as being ineffective because of the later decision in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
PENALTY
1-4 These points were raised and discussed earlier. Ireland was never informed as to the persons Griffin now wishes he had used. Ireland testified as to his own strategy used in presenting the cause of his client at the penalty phase. Others may have handled the matter differently, but I am not persuaded that such tactical decision now should be declared to be erroneous or that it demonstrates ineffective counsel.
*884 I must comment on some matters developed during the hearing designed to demonstrate lack of time spent by Ireland in preparation for the defense of this case. Ireland did not have the benefit of his case files to use before or at the hearing. These had, at the request of Griffin, long ago been turned over to Mr. Lámelas and Ireland had not had the benefit of their use. There was presented in evidence a Motion for Order Setting and Awarding Attorney’s Fees and Costs signed under oath by Ireland. This document, Defense Ex. # 2, was used to establish that Ireland did only that which is stated in such Motion, and to show unequivocally that Ireland had very little time in preparation for the case. I do not ignore the contents of the Motion, and neither do I ignore my own knowledge of the purpose for which such Motion was prepared. It was not prepared to demonstrate to the satisfaction of the Court that Ireland had properly and effectively represented his client. It was prepared for the purpose of demonstrating that sufficient time had been devoted to the case to justify at least the maximum attorney’s fee authorized by law. Ireland testified that the Motion, although under oath, did not include reference to all the time spent in the case. I know that and I believe it to be true.
I have considered the matters raised in the Amended Motion, the evidence presented, and the argument of counsel. I am aware that defendant faces the death penalty if his claims of ineffective assistance of counsel are denied. I have viewed the claims now made both individually and collectively. I am fully aware that with all the record review now available and the prompting made by cumulative well trained minds there are various alternate approaches that trial counsel could have taken differently, and indeed today, may do differently. I cannot and do not find that the constitutional rights of the defendant to effective assistance of counsel were violated using either Knight or Washington standards. There has been no showing of resulting altering possibilities, probabilities, or any actual and substantial detriment.
IT IS THEREFORE ORDERED AND ADJUDGED that the Amended Motion to Vacate, Set Aside or Correct Conviction and Sentence and Order a New Trial is denied.
The defendant has not exceeding 30 days to appeal this Order.
DONE AND ORDERED in Chambers at Gainesville, Florida, this 13th day of March, 1984.
s/Osee R. Fagan OSEE R. FAGAN, CIRCUIT JUDGE